[Cite as *State v. Miller*, 2021-Ohio-277.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2020-01-003 |
| | : | O P I N I O N |
| - vs - | | 2/1/2021 |
| | : | |
| DAVID MILLER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2019TRC000018


David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee

Ernst & Associates, LLC, Matthew T. Ernst, 212 Eighth Street West, Cincinnati, Ohio 45202, for appellant


**HENDRICKSON, P.J.**

{¶1}  Appellant, David Miller, appeals the decision of the Warren County Court denying his motion to suppress.

{¶2}  Around 7:00 p.m. on December 27, 2018, Officer Greg Watkins of the Hamilton Township Police Department was dispatched to a single vehicle crash in Warren County.  Upon arriving at the scene, Officer Watkins observed a vehicle with severe front-

end damage parked in a residential neighborhood's roadway. Due to the severity of the damage, the vehicle appeared inoperable. After arriving, Officer Watkins made contact with Miller, who was sitting in the driver's seat of the vehicle. At that point, Miller informed the officer that he was driving when the vehicle's brakes locked up, which caused him to lose control of the vehicle and crash into a guardrail. Miller did not sustain any injuries as a result of the accident.

{¶3} While discussing the accident with Miller, Officer Watkins noticed a strong odor of alcohol on Miller's breath and that Miller was slurring his speech. Officer Watkins asked Miller if he had been drinking, and Miller responded that he had a drink on the way to the bar and another drink while he was at the bar. At that point Officer Watkins asked Miller to perform field sobriety tests and Miller agreed. Miller then exited his vehicle and appeared slightly off balance.

{¶4} After exiting his vehicle, Miller agreed to perform the Horizontal Gaze Nystagmus ("HGN"), the one-leg stand, and the walk-and-turn tests. During the tests, Officer Watkins noticed multiple indicators of impairment. As a result, Officer Watkins arrested Miller for driving under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) and (d) and failing to maintain reasonable control of his vehicle in violation of R.C. 4511.202.

{¶5} After his arrest, Miller was transported to the Lebanon state highway patrol post where he consented to taking a breathalyzer test. State Trooper Jacob Olsen administered the test using the Intoxilyzer 8000, which is a self-controlled, self-calibrating breath test. At the conclusion of the test, Miller registered an alcohol content of .153 grams per 210 liters of breath.

{¶6} Miller entered a not guilty plea to the charges. Thereafter, in March 2019, Miller moved to suppress evidence obtained as a result of Officer Watkins' investigation.

Specifically, the boilerplate motion sought to suppress any tests of Miller's coordination, sobriety, alcohol, or drug level; any observations and opinions of the officer who stopped Miller; any statements made by Miller; and any physical evidence obtained by the police. Notably, Miller did not allege any case-specific factual bases for his challenges. After a hearing, Miller submitted a written closing argument, wherein he argued the evidence should be suppressed for three reasons: (1) the state failed to establish the breath test was taken within three hours of the accident; (2) the state failed to prove it complied with seven Ohio Administrative Code ("OAC") provisions; and (3) Officer Watkins did not properly administer the field sobriety tests.

{¶7} In June 2019, the trial court granted in part and denied in part Miller's motion to suppress. Specifically, the trial court found it is unclear whether Officer Watkins "correctly conducted the HGN tests," and suppressed any mention of the HGN test and Officer Watkins' observations during the HGN test as a result. The trial court denied Miller's motion in all other respects. Relating to the breathalyzer test results, the trial court stated the following in its decision:

> Trooper Olsen's testimony focused on the breathalyzer test. There was cause to perform the breathalyzer test. Trooper Olsen testified that the machine was functioning properly per the protocol provided to him, and the test was performed as instructed. That test will not be suppressed.

Miller moved the trial court to reconsider its decision not to suppress the breathalyzer test results, which the trial court denied.

{¶8} In November 2019, Miller entered a no contest plea to the three charges. The charges merged for sentencing purposes, and the trial court elected to proceed on the OVI charge brought pursuant to R.C. 4511.19(A)(1)(a). The trial court sentenced Miller to 180 days in jail, suspended his license for one year, and imposed a $375 fine, plus costs. The sentence was stayed pending this appeal.

{¶9} Miller now appeals, raising three assignments of error for our review.

{¶10} Assignment of Error No. 1:

{¶11} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE BREATH TEST BASED UPON THE 3 HOUR RULE.

{¶12} In his first assignment of error, Miller argues the trial court erred in failing to suppress the results of the breathalyzer test because the state failed to prove Miller took the breath test within three hours of operating his vehicle while under the influence of alcohol. We disagree.

{¶13} Appellate review of a trial court's decision to grant or deny a motion to suppress is a mixed question of law and fact. *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 8. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14, 999 N.E.2d 1233. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Id*.

{¶14} R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol[.]" In a criminal prosecution for a violation of R.C. 4511.19(A)(1), "the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the alleged violation." R.C. 4511.19(D)(1)(b).

{¶15}  Miller claims the state failed to establish the "breath test was taken within 3 hours" of the accident.  Whether the state complied with the statutory time limit for the administration of a breath test is a foundational question to be determined by the trial court. *State v. Robertson*, 12th Dist. Butler No. CA91-10-179, 1992 Ohio App. LEXIS 3874, *2 (July 27, 1992).  In turn, because Miller challenges the trial court's factual finding that the breathalyzer test was administered to him within the statutory time limit, this court must accept that finding so long as it was supported by competent, credible evidence.  *State v. Lester*, 12th Dist. Warren No. CA2009-07-093, 2010-Ohio-41, ¶ 8.

{¶16}  At the suppression hearing, Officer Watkins testified he was dispatched to a single vehicle crash at 6:57 p.m.  According to the record, Trooper Olsen administered the breathalyzer test approximately one hour later at 7:56 p.m.  Officer Watkins described the area where the accident occurred as a "pretty visible" and heavy traffic area, as well as "probably one of the most busiest" areas.  The car sat inoperable and blocking the lane of travel until Officer Watkins arrived.

{¶17}  Upon arriving at the scene, Officer Watkins made contact with Miller, who was seated in the driver's seat of his car.  At that point, Miller informed the officer that the brakes in his vehicle had locked up, which caused him to lose control of the vehicle and crash into the guardrail.  Miller also confirmed he had consumed alcohol "prior to his travels," including a drink on the way to the bar and a drink while at the bar.  While Miller did not give any indication as to when the accident occurred or whether he had exited the car since the accident, Miller was not injured or unconscious when the officer arrived.

{¶18}  After a review of the record, we find there is competent and credible evidence that the breathalyzer test was administered to Miller within three hours of the alleged violation.  As discussed above, Officer Watkins arrived at the scene of the accident at 6:57 p.m., and Miller submitted to the breathalyzer test at 7:56 p.m.  Consequently, for the three-

hour statutory time limit to have expired, Miller's accident would have had to occur more than two hours prior to Officer Watkins' arrival to the scene. This conclusion is unsupported by the record where, as is the case here, Miller's vehicle rested inoperable in the lane of travel in what the officer described as a visible part of one of the busiest areas of traffic and at a time where the traffic flow was described as "heavy." Furthermore, when the officer arrived, Miller remained in his vehicle, uninjured and capable of exiting. Because Miller had the capability to exit the vehicle, we find it is improbable that Miller would have remained in his vehicle for over two hours after crashing his vehicle into the guardrail. When considering the above facts, we find there is simply no evidence, circumstantial or otherwise, to indicate anything other than the accident occurred shortly before Officer Watkins was dispatched to the scene. *See Lester* at ¶ 12.

{¶19} Moreover, the fact that there was no direct evidence to prove Miller had crashed his vehicle within two hours before Officer Watkins responded to the dispatch is immaterial as "circumstantial evidence and direct evidence inherently have the same probative value[.]" *State v. Wilkinson*, 12th Dist. Warren No. CA2018-08-087, 2019-Ohio-1199, ¶ 39, citing *State v. Wright*, 12th Dist. Fayette No. CA2017-10-021, 2018-Ohio-1982, ¶ 32. As such, given the circumstances surrounding Miller's accident, there is competent credible evidence within the record to indicate Miller had crashed his vehicle while under the influence of alcohol shortly before Officer Watkins arrived on the scene. Therefore, because the state presented sufficient circumstantial evidence that the accident occurred less than two hours before Officer Watkins was dispatched to the scene, we conclude the state complied with the statutory time limit for the administration of a breath test and the trial court did not err in denying Miller's motion to suppress on those grounds.

{¶20} Accordingly, Miller's first assignment of error is overruled.

{¶21} Assignment of Error No. 2:

{¶22} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS THE BREATH TEST BASED UPON NO EVIDENCE OF COMPLIANCE WITH THE OHIO ADMINISTRATIVE CODE.

{¶23} Miller argues in his second assignment of error that the trial court erred in finding the breath test results should not be suppressed. Specifically, Miller claims there is no evidence of compliance with several provisions of the OAC and therefore, the state failed to carry its burden to prove the test result is admissible.

{¶24} Pursuant to Crim.R. 47, in filing a motion to suppress in a criminal proceeding, a defendant "shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought." This requires a defendant to "state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. After the defendant meets this burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards, in this case the OAC requirements and certain Ohio Department of Health ("ODH") regulations. *State v. Plunkett*, 12th Dist. Warren No. CA2007-01-012, 2008-Ohio-1014, ¶ 11, citing *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 220 (1988).

{¶25} Although the burden shifts to the state, the extent of the state's burden of proof establishing substantial compliance "only extends to the level with which the defendant takes issue with the legality of the test." *State v. Nicholson*, 12th Dist. Warren No. CA2003-10-106, 2004-Ohio-6666, ¶ 10. For example, "[w]hen a defendant files a motion to suppress that provides factual bases specific to the defendant's case in support of his or her claims that a particular ODH regulation was not followed, the state must show substantial compliance with that ODH regulation." *State v. Dugan*, 12th Dist. Butler No. CA2012-04-

- 7 -

081, 2013-Ohio-447 ¶ 33, citing *State v. Deutsch*, 12th Dist. Butler No. CA2008-03-035, 2008-Ohio-5658, ¶ 11.

{¶26} However, "[w]hen the language in the motion to suppress raises only general claims, even though accompanied by specific administrative code subsections, then there is only a slight burden on the state to show, in general terms, compliance with the health regulations." *State v. Jimenez*, 12th Dist. Warren No. CA2006-01-005, 2007-Ohio-1658, ¶ 25. Yet, even in those instances, the defendant may still provide some factual bases, either during cross-examination or by conducting formal discovery, to support a claim that the standards were not followed in an effort to raise the "slight burden" placed on the state. *Plunkett* at ¶ 25-26, citing *State v. Embry*, 12th Dist. Warren No. CA2003-11-110, 2004-Ohio-6324, ¶ 12.

{¶27} In this case, Miller's boilerplate motion alleged, among other things, that Miller's breath test results should be suppressed unless the state could demonstrate conformity with 14 OAC provisions. Specifically, Miller alleged the state was required to prove "the instrument was in proper working order, that its manipulator had the qualifications to conduct the test, and that such test was made in accordance with the Ohio Department of Health Regulations," as well as substantial compliance with the OAC's record keeping requirements.

{¶28} In Miller's written closing argument, he abandoned half of the challenges identified in his motion to suppress, and argued the state failed to prove compliance with the following OAC provisions:

1) No proof of a yearly instrument certification required by OAC 3701-53-04(C).

2) The instrument was not certified using an instrument check solution containing ethyl alcohol approved by the Director of Health. OAC 3701-53-04(C).

3) The instrument certification required by the OAC was not at or within five one-thousandths (.005) grams per two hundred ten liters of the target value for that instrument check solution. OAC 3701-53-04(A)(2).

4) The instrument check solution was used more than three months after its date of first use. OAC 3701-53-04(E).

5) The instrument check solution was used after the manufacturer's expiration date, or more than three years after its date of manufacture, notwithstanding the manufacturer's expiration date. OAC 3701-53-04(E).

6) The instrument check solution was not kept under refrigeration after first use, and the solution container has not been retained for reference until the calibration solution is discarded. OAC 3701-53-04(E).

7) The results of instrument checks, calibration checks, and records of maintenance and repairs have not been retained in accordance with paragraph (A) of rule 3701-53-01 of OAC that requires they be retained for not less than three years. OAC 3701-53-04(G).

{¶29} Although Miller's motion did not cite to any facts specific to this case to support his allegations that the state failed to follow the above regulations, this court has considered similarly worded motions, although broad and sweeping, as sufficient to put the prosecutor and the court on notice that the appellant wished to generally challenge the maintenance, calibration, and testing procedures related to the breathalyzer test. *See Embry*, 2004-Ohio-6324 at fn. 1, ¶ 14. As a result, we find Miller adequately challenged the state's compliance with the seven regulations set forth above. However, because Miller's challenges are general, the state is only required to demonstrate, in general terms, that it substantially complied with the regulations. *Id.* at ¶ 12.

{¶30} At the hearing on the motion to suppress, Trooper Olsen, who administered the breathalyzer test, testified regarding Miller's breath test. The trooper testified his position as a trooper included conducting breathalyzer tests on subjects brought in by the

Hamilton Township Police Department. According to the trooper, his department uses the Intoxilyzer 8000, which he described as a self-controlled, self-calibrating, breath test that measures the amount of alcohol in a subject's deep lungs. The trooper indicated he was trained to be an operator for the Intoxilyzer 8000, which includes a course on operating the machine as well as a test and yearly "refresher." He stated he had been certified to use the Intoxilyzer 8000 since approximately February 2014 and had administered between 50 and 100 tests since becoming certified.

{¶31} Trooper Olsen then discussed his standard operation of the machine. Specifically, according to Trooper Olsen, when he runs the machine it proceeds to go through self-checks. Those self-checks appear as a "checklist" of sub-screens and operate to ensure the machine and its gas chamber are functioning properly and that the tests results are accurate. The trooper indicated the self-check on the gas chamber ensures the results of the breath test will be "plus or minus .003 percent BAC." Trooper Olsen could not detail specifically what other self-checks the machine conducted; however, he indicated that if the machine detects an error, the Ohio Department of Health shuts the machine down until it is fixed. Additionally, the Department of Health is responsible for calibrating the machine when something goes wrong.

{¶32} At the hearing, Trooper Olsen also detailed the test he administered on Miller on December 27, 2018, including a discussion of State's Exhibit 2, the paper results of Miller's breathalyzer test. The trooper testified that he completed the checklist prior to administering Miller's breathalyzer test to ensure the machine was operating properly that day. Additionally, based upon State's Exhibit 2, the trooper stated the machine had conducted the self-checks when he administered Miller's breathalyzer test and did not identify any problems with the test. He further indicated any issues would be noted on the results of Miller's breathalyzer test, and because there were none identified on State's

Exhibit 2, he had no reason to believe the machine was malfunctioning in any way. Trooper Olsen then confirmed the machine was operating properly before and during Miller's test. At the conclusion of the test, Miller registered an alcohol content of .153 grams per 210 liters of breath.

{¶33} The state relies heavily upon State's Exhibit 2 to demonstrate it substantially complied with the seven OAC provisions set forth in Miller's motion. State's Exhibit 2 indicates the machine was last certified on 12/20/2018, seven days before Miller's breathalyzer test, and that the solution used in the test was certified by the ODH and labeled as Certified Solution #ODH-0026.

{¶34} On cross-examination, the trooper testified he is not sure of the age of his Intoxilyzer 8000 and reiterated that everything is "self-contained" on the machine. The trooper further indicated he is aware the department of health has some requirements for the machine but is unsure of what those requirements are. The trooper was also unsure if the machine had any prior maintenance issues, or how many times it had been "out" for service, but confirmed he had no prior issues with the machine. On cross-examination, Miller did not specifically address any of the issues identified in his motion to suppress. Instead, Miller focused on the age of the machine and the calibration checks.

{¶35} Based on the above, we find the state produced enough evidence at the hearing on Miller's motion to suppress to create a reasonable inference that the machine had been certified within the last year as required by O.A.C. 3701-53-04(C); the machine was certified using an instrument check solution as defined by O.A.C. 3701-53-04(C); and that the instrument check solution was within five one-thousandths grams per two hundred ten liters of the target value for that instrument check solution as defined by O.A.C. 3701-53-04(A)(2). Specifically, State's Exhibit 2 indicates the Intoxilyzer 8000 used by the trooper was last certified by the ODH seven days before Miller's breathalyzer test, with a test

solution that was certified by the ODH and within the requisite target level. Such evidence is sufficient to show, in general terms, that the requirements set forth in OAC 3701-53-04(C) and 3701-53-04(A)(2) were met.

{¶36} However, regarding Miller's remaining four challenges, we find the state failed to demonstrate, even in general terms, that it substantially complied with OAC 3701-53-04(E) and (G). First, Miller's motion specifically put the prosecution on notice that Miller intended to challenge the state's compliance with OAC 3701-53-04(E). The motion informed the prosecution that Miller sought to challenge the validity of the instrument check solution due to its age and whether there was proper refrigeration of the instrument check solution. Despite this notice, no evidence was presented at the hearing regarding these issues. Trooper Olsen did not discuss the age of the instrument check solution, its expiration date, or the state's maintenance of that solution while it was not in use, nor was he questioned about these issues by the prosecutor. Moreover, although State's Exhibit 2 offers some information regarding the instrument check solution, nothing on the form indicates the solution met the OAC requirements referenced here. That is, although State's Exhibit 2 indicates the solution was certified by the ODH shortly before Miller's test, it does not indicate whether the solution was properly refrigerated thereafter, nor does it state the solution's date of first use or its expiration date.

{¶37} As this court has previously noted, the burden on the state to show substantial compliance with these requirements is minimal. *State v. Johnson*, 137 Ohio App. 3d 847, 854 (12th Dist.2000), citing *State v.* Snider, 1997 Ohio App. LEXIS 1799, *2 (May 5, 1997). Basic testimony that the solution was maintained according to ODH regulations may have been sufficient. *Id*. However, where the record contains no evidence whatsoever that the solution was maintained according to the ODH regulations, we cannot say that the prosecution met its burden. *Id.*

{¶38} Similarly, the state was also specifically put on notice by Miller's motion that he intended to challenge whether the results of instrument checks, calibration checks, and records of maintenance and repairs had been retained for at least three years. Again, establishing substantial compliance with this requirement was possible with minimal effort on the part of the prosecution. That is, even basic testimony regarding the retention of records in compliance with OAC 3701-53-04(G) would have been sufficient. *See Embry*, 2004-Ohio-6324, at ¶ 32 (finding the defendant's general allegations of noncompliance with OAC 3701-53-04(G) were sufficiently addressed by the officer's testimony that he follows the ODH regulations, maintains a logbook, and keeps records over the required time periods). Despite this minimal burden, no evidence was produced, either by testimony or documentation, which addressed this OAC requirement either in specific or general terms. As a result, because the state produced no evidence that records were kept in compliance with OAC 3701-53-04(G), we find the state failed to meet its burden in establishing substantial compliance with that regulation.

{¶39} In light of the above, we find that the prosecution did not meet its burden to establish substantial compliance with the requirement that the solution be maintained according to the ODH regulations and used within a designated period of time, and that the relevant records were retained in compliance with the OAC. Because these issues were raised in the motion to suppress, the prosecution was required to produce some evidence to show substantial compliance with these requirements. Due to the extremely limited testimony from Trooper Olsen regarding the issues set forth in Miller's motion, and the complete lack of information regarding the record retention policy, we find the evidence presented was insufficient in this case. As such, because the prosecution failed to meet its burden to demonstrate substantial compliance, the trial court should have suppressed the breathalyzer test results.

{¶40} Accordingly, Miller's second assignment of error is sustained.

{¶41} Assignment of Error No. 3:

{¶42} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS BASED UPON PROBABLE CAUSE TO ARREST.

{¶43} In his remaining assignment of error, Miller argues the trial court erred in denying his motion to suppress because Officer Watkins did not have probable cause to arrest. Miller claims there was no probable cause to suggest he was impaired at the time of the violation.

{¶44} "In order to arrest a person without a warrant an officer must have probable cause." *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 (1964). Probable cause to arrest for OVI exists when, at the moment of arrest, the arresting officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, to cause a prudent person to believe the accused was driving under the influence of alcohol. *State v. Way*, 12th Dist. Butler No. CA2008-04-098, 2009-Ohio-96, ¶ 30. This determination is based on the totality of the surrounding circumstances. *Id.* Notably, if the offense in question is driving under the influence of alcohol, the officer does not have to actually observe the defendant driving in order to possess probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol. *State v. Johnson*, 12th Dist. Warren No. CA98-07-080, 1998 Ohio App. LEXIS 6138, *5 (Dec. 21, 1998).

{¶45} At the suppression hearing, Officer Watkins testified he had seven years of law enforcement experience and had made multiple traffic stops for possible impairment. Since joining Hamilton Township Police Department, the officer indicated he had cited between 10 and 12 individuals for OVI. Officer Watkins further testified that while investigating the circumstances of Miller's accident, the officer noticed a strong odor of

alcohol on Millers breath, slurred speech, and that he was somewhat off-balance. When Officer Watkins asked Miller if he had been drinking Miller admitted to the officer that he had two beers, one while driving to the bar and one at the bar.

{¶46} During the walk-and-turn test, Officer Watkins noticed several signs of impairment, including Miller walking off the line and losing his balance. Miller also had trouble standing in the starting position and balancing himself. Miller ultimately elected not to complete the test. According to Officer Watkins, officers take an individual's inability to complete a field sobriety test into consideration when determining whether that person is impaired.

{¶47} Officer Watkins also noticed signs of impairment during Miller's participation in the one-leg stand test. Specifically, Officer Watkins testified Miller lost his balance after eight seconds and had to "catch himself" on the hood of the officer's cruiser.

{¶48} On appeal, Miller first argues the facts surrounding Miller's arrest did not amount to probable cause because the state failed to prove that any level of impairment the officer observed could be linked to the time Miller operated his vehicle. However, as we noted in our discussion of Miller's first assignment of error, we find there is credible evidence in the record to establish the accident occurred shortly before Officer Watkins' arrival at the scene. As a result, we are unpersuaded that the officer's observations of Miller are not linked to Miller's impairment while driving his vehicle shortly before the officer's arrival.

{¶49} We also reject Miller's argument that the field sobriety tests were unreliable and therefore, cannot form the basis of probable cause. As an initial note, the record reflects Miller performed three field sobriety tests, however, the trial court found it was unclear whether Officer Watkins "correctly conducted the HGN tests," and suppressed any mention of the HGN test and Officer Watkins' observations during the HGN test as a result. The trial court found the remaining two tests, the walk-and-turn and one-leg-stand tests,

were conducted properly. Miller does not challenge this finding on appeal. Instead, Miller argues the remaining tests could not establish probable cause because Officer Watkins could not testify to any of the standardized clues and did not know how many clues were required to establish Miller was impaired and effectuate his arrest. However, simply because the officer could not recall all of the available clues off the top of his head is not fatal to the determination of probable cause. *See State v. Keene*, 7th Dist. Mahoning No. 08 MA 95, 2009-Ohio-1201, ¶ 32. Furthermore, the record reflects the officer followed a checklist while administering the field sobriety tests and that the officer testified to the clues of impairment he observed during those tests. As a result, we conclude it is inconsequential to the determination of probable cause that the officer could not recite, verbatim, each clue for the respective tests.

{¶50} Notwithstanding the above, "[t]he totality of facts and circumstances can support a finding of probable cause to arrest for DUI even in the absence or exclusion of field sobriety tests." *State v. Crotty*, 12th Dist. Warren No. CA2004-05-051, 2005-Ohio-2923, ¶ 14; *see, e.g.*, *State v. Minton*, 12th Dist. Warren No. CA2017-08-132, 2018-Ohio-2142, ¶ 14-15 (probable cause to arrest existed where officer detected odor of alcoholic beverage coming from inside the vehicle, appellant admitted to consuming alcohol, refused to submit to field sobriety testing, and exhibited bloodshot and glassy eyes, sluggish and slurred speech, and was unsteady on his feet); *City of Wilmington v. Taylor*, 12th Dist. Clinton No. CA2009-11-018, 2010-Ohio-3255, ¶ 20 (probable cause to arrest existed where officer detected moderate to strong odor of alcoholic beverage coming from inside the vehicle and on person, appellant had bloodshot and glassy eyes, slow and pertinent speech, and refused to submit to field sobriety testing). Therefore, even if we were to exclude the officer's observations during the two properly conducted field sobriety tests, we find the totality of the circumstances, including Miller's involvement in a single-car accident,

Miller's admission to drinking alcohol earlier in the evening, the officer's observations of a strong odor of alcohol on Miller's breath, Miller's slurred speech and delayed responses, and that Miller was somewhat off balance provided probable cause for the arrest for operating a vehicle while under the influence of alcohol.

{¶51} Accordingly, Miller's third assignment of error regarding the existence of probable cause is without merit and is therefore, overruled.

{¶52} Due to our decision to sustain Miller's second assignment of error, we reverse the trial court's denial of Miller's motion to suppress with regard to the chemical test results and vacate Miller's no contest pleas. This matter should be returned to the trial court's docket at the point where the trial court erroneously denied Miller's motion to suppress. Thereafter, Miller must be left in the position of assessing his decision to plead or go to trial based on the ruling that is made on what type of evidence will be admitted against him.

{¶53} Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

S. POWELL and PIPER, JJ., concur.