[Cite as *State v. Johnson*, 2023-Ohio-1320.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-016 |
| | : | O P I N I O N |
| - vs - | | 4/24/2023 |
| | : | |
| DANIEL JAMES JOHNSON, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
Case No. 21 CR 013672


Martin P. Votel, Preble County Prosecuting Attorney, and Kathryn M. West, Assistant Prosecuting Attorney, for appellee.

James Vanzant, for appellant.


**S. POWELL, P.J.**

{¶ 1} Appellant, Daniel James Johnson, appeals from his conviction in the Preble County Court of Common Pleas after he pled no contest to one count of third-degree felony aggravated possession of drugs. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On June 7, 2021, the Preble County Grand Jury returned an indictment

charging Johnson with one count of third-degree felony aggravated possession of drugs and one count of fourth-degree misdemeanor illegal use or possession of drug paraphernalia. The charges arose after Officer Paul S. Eversole with the Eaton Police Department initiated a traffic stop on Johnson's vehicle on May 17, 2021. This stop occurred after Johnson failed to use his turn signal in violation of R.C. 4511.39(A) moments after Johnson was observed in what appeared to be a drug transaction in the parking lot of a vacant grocery store. A canine unit was then called to the scene of the stop. Once there, the canine officer, Rossi, gave a positive alert to the odor of narcotics coming from Johnson's vehicle. A subsequent search of Johnson's vehicle led to the discovery of approximately 7.8 grams of methamphetamine and a pipe used to smoke methamphetamine was found on Johnson's person.

{¶ 3} On June 30, 2021, Johnson entered a plea of not guilty to both charged offenses. Approximately two months later, on September 1, 2021, Johnson filed a motion to suppress, wherein Johnson alleged he was subject to an "illegal pursuit and traffic stop" by Officer Eversole. To support this claim, Johnson argued, in pertinent part, the following:

> The video recording of Off. Eversole's "following" of [Johnson's] truck reveals that Off. Eversole, before observing any alleged traffic rule infraction, had to catch up to [Johnson's] position.[1] In order to do so Off. Eversole chose to drive his patrol vehicle in excess of 50 miles per hour, moving his vehicle left of center several times going across the double yellow solid lane marker, weaving around and past other motorists, he had to brake the vehicle very hard in order to return to the legal lane of travel, and this went on for several blocks of roadway driving northbound on Aukerman Drive in the City of Eaton. It was not until after several blocks of this type of driving that Off. Eversole engaged his emergency lights signaling [Johnson] to stop.

Johnson also argued that Officer Eversole had "endangered the lives" and "wellbeing of the

---

1. The video footage captured by Officer Eversole's dashboard cruiser camera was not made part of the trial court record and is therefore not a part of the record before this court on appeal.

other motorists on the road that day not to mention the all too real possibility that a child or other pedestrian may have made their way onto the roadway while he was operating his patrol vehicle in this reckless manner."

{¶ 4} Johnson thereafter concluded his suppression motion by arguing, without any supporting authority, that:

> [t]here have to be limits to what is acceptable behavior by the police when engaging with the public in traffic law enforcement. It should not be too much to expect police officers to respect and obey the very laws they are charged with enforcing. Off. Eversole did not in this case and the evidence he seized from [Johnson] should be suppressed. If Off. Eversole had engaged in a normal and ordinary patrol routine on the day in question he would have never been in a position to have observed the alleged traffic violation which led to the stop in this case.

{¶ 5} The trial court scheduled a hearing on Johnson's motion to suppress for September 29, 2021. For various reasons, none of which are relevant here, that suppression hearing was then continued several times to just under seven months later, on April 12, 2022. On April 1, 2022, eleven days before the hearing on Johnson's motion was scheduled to begin, the state filed a motion to dismiss Johnson's suppression motion. To support its motion, the state argued that Johnson had failed to state with particularity the grounds upon which his motion to suppress was based as required by Crim. 47.

{¶ 6} On April 7, 2022, the trial court issued a decision granting the state's motion to dismiss. In so holding, the trial court stated:

> Criminal Rule 47 provides that an application to the Court for an order shall be made by written motion, stating with particularity the grounds upon which it is made. [Johnson's] motion asserts that the stop of his vehicle that led to his arrest and the instant charges was illegal. However, as the State asserts, the motion and supporting memorandum do not cite anything illegal about the stop or arrest of [Johnson]. [Johnson] argues that the arresting officer drove faster than the posted speed limit and had to weave around other motorists in order to catch up to [Johnson's] vehicle. While [Johnson] is critical of the officer's driving, he does not dispute that the officer observed him

- 3 -

commit a turn signal violation.

The trial court also noted that, "[t]here is no assertion in [Johnson's] motion or memorandum that [his] rights were in any way violated which would even arguably justify the granting of a motion to suppress."

{¶ 7} On July 28, 2022, the trial court held a change of plea hearing. During this hearing, Johnson entered a plea of no contest to the third-degree felony aggravated possession of drugs charge in exchange for dismissal of the fourth-degree misdemeanor charge of illegal use or possession of drug paraphernalia. The trial court accepted Johnson's no contest plea upon finding the plea had been knowing, intelligently, and voluntarily entered. Upon accepting Johnson's no contest plea, and when considering the state's recitation of facts, the trial court then found Johnson guilty as charged. The following month, on August 15, 2022, the trial court held a sentencing hearing where it sentenced Johnson to serve an 18-month prison term, less 26 days of jail-time credit. The trial court also notified Johnson that he would be subject to an optional two-year term of postrelease control upon his release from prison.

### Johnson's Appeal and Single Assignment of Error

{¶ 8} On September 8, 2022, Johnson filed a notice of appeal. Oral argument was held before this court on March 6, 2023. Johnson's appeal now properly before this court for decision, Johnson has raised one assignment of error for review. In his single assignment of error, Johnson argues the trial court erred by dismissing his motion to suppress for failing to state with particularity the grounds upon which the motion was based as required by Crim.R. 47. We disagree.

*Motions to Suppress and Crim.R. 47's Particularity Requirement*

{¶ 9} Crim.R. 47 governs motions in a criminal proceeding. *State v. Johnson*, 12th Dist. Preble No. CA2017-12-016, 2018-Ohio-3621, ¶ 13. This includes a defendant's

motion to suppress. *State v. Poff*, 12th Dist. Butler No. CA93-03-051, 1993 Ohio App. LEXIS 4584, *4 (Sept. 27, 1993). Specifically, Crim.R. 47 provides:

> An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.

Thus, given its plain language, Crim.R. 47 obligates the defendant in filing a motion to suppress to state with particularity the grounds upon which the motion is being made. This is the defendant's initial burden of production. *See State v. Johnson*, 137 Ohio App.3d 847, 851 (12th Dist.2000). "The burden of going forward with evidence shifts to the state only when the defendant has satisfied [his or her] initial burden * * *." *State v. Gangloff*, 1st Dist. Hamilton Nos. C-060481 and C-060536, 2007-Ohio-4463, ¶ 10.

{¶ 10} For a defendant to satisfy his or her initial burden, "[t]he defendant need not particularize the legal and factual bases for his [or her] challenge in excruciating detail." *State v. Rife*, 4th Dist. Ross No. 11CA3276, 2012-Ohio-3264, ¶ 18. The defendant must, however, "'state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the [trial] court on notice of the issues to be decided.'" *State v. Miller*, 12th Dist. Warren No. CA2020-01-003, 2021-Ohio-277, ¶ 24, quoting *State v. Shindler*, 70 Ohio St.3d 54 (1994), syllabus. "[A]nd, by omission, those issues which are otherwise being waived." *State v. Taylor*, 10th Dist. Franklin No. 12AP-283, 2012-Ohio-6200, ¶ 11, citing *Shindler* at 58. That is to say, "[a] defendant's motion to suppress must clearly identify the grounds upon which he [or she] challenges the constitutionality of a warrantless seizure." *State v. Walton*, 12th Dist. Butler No. CA2020-12-124, 2021-Ohio-3958, ¶ 21, citing *Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988).

*Johnson's Arguments and Analysis*

{¶ 11} Johnson argues it was error for the trial court to dismiss his motion to suppress pursuant to Crim.R. 47 because the motion "clearly stated" the "legal theory" upon which it was based—that being Officer Eversole's "illegal pursuit and stop" of his vehicle. To support this claim, Johnson equates the facts of this case to those faced by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). The United States Supreme Court's decision in *Terry*, however, addressed under what circumstances a police officer may briefly stop and detain an individual without an arrest warrant or probable cause to make an arrest. *See State v. McClendon*, 12th Dist. Fayette No. CA2006-06-025, 2007-Ohio-1656, ¶ 31. This type of investigative stop, which is now more commonly referred to as a *Terry* stop, occurs when the officer has reasonable suspicion based on specific, articulable facts, that criminal activity is afoot. *Terry* at 21; *State v. Massey*, 12th Dist. Clinton No. CA2021-03-010, 2022-Ohio-100, ¶ 37.

{¶ 12} The stop at issue in this case was not a *Terry* stop. The stop was instead a non-investigatory stop based on probable cause arising from Officer Eversole personally observing Johnson commit at least one, if not more, traffic violations. Specifically, Officer Eversole observing Johnson fail to use his turn signal in violation of R.C. 4511.39(A). It is well-established that where a law enforcement officer has probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996); *State v. Bullock*, 12th Dist. Clinton No. CA2016-07-018, 2017-Ohio-497, ¶ 6. This includes circumstances where a motorist fails to use his or her turn signal in violation of R.C. 4511.39(A). *See State v. Jozwiak*, 12th Dist. Warren No. CA2019-09-091, 2020-Ohio-3694, ¶ 18. This remains true "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Erickson* at syllabus.

{¶ 13} Johnson does not dispute that Officer Eversole observed him commit a traffic

violation by failing to use his turn signal in violation of R.C. 4511.39(A). Johnson also does not dispute that the canine sniff of his vehicle was constitutionally permissible or that his arrest was supported by probable cause given the presence of drugs and drug paraphernalia found on his person. Johnson merely challenges the way Officer Eversole operated his police cruiser prior to Officer Eversole initiating the stop of his vehicle. However, while it may be true that Officer Eversole was driving faster than the posted speed limit and weaving around other motorists just prior to effectuating that stop, we fail to see how that had any impact on the question of whether Johnson's constitutional rights had been violated. This includes Johnson's right to be free from unreasonable searches and seizures as guaranteed to him by the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

{¶ 14} "Generally, a 'seizure' occurs when a police officer, by means of physical force or show of authority, has restrained an individual's liberty in some way." *State v. Smith*, 12th Dist. Warren No. CA89-10-055, 1990 Ohio App. LEXIS 3457, *3-*4 (Aug. 13, 1990), citing *Terry,* 392 U.S. at 19, fn. 16. The stop of a motor vehicle, even if for a limited purpose or a brief amount of time, constitutes the seizure of a person under both the Fourth Amendment of the United States Constitution and Article 1, Section 14 of the Ohio Constitution. *State v. Hessel*, 12th Dist. Warren No. CA2009-03-031, 2009-Ohio-4935, ¶ 10, citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074 (1976); *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, ¶ 26. Therefore, because a traffic stop initiated by a police officer constitutes a seizure for Fourth Amendment purposes, the stop "must comply with the Fourth Amendment's general reasonableness requirement." *State v. Willis*, 12th Dist. Butler No. CA2012-08-155, 2013-Ohio-2391, ¶ 18, citing *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769 (1996). The same is true as it relates to the general reasonableness requirement set forth in Article I, Section 14 of the Ohio

- 7 -

Constitution. *See State v. Orr*, 91 Ohio St.3d 389, 391 (2001).

**{¶ 15}** These reasonableness requirements, however, are only applicable to the traffic stop itself, not to the efforts that a police officer may take to initiate and effectuate that stop.[2] That is to say, a traffic stop that otherwise satisfies the reasonable requirements set forth under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution does not become unreasonable simply because the stop was initiated by a police officer who did not adhere to all traffic laws prior to effectuating that stop. To hold otherwise would stretch the protections against unreasonable searches and seizures afforded to individuals by the United States and Ohio Constitutions beyond anything the forefathers of this great country and great state ever intended.[3] Therefore, although Johnson believes this case presents the perfect opportunity for this court "to 'pull the reigns (sic)' so to speak in exercising control over the actions of the police," we disagree and instead find no error in trial court's decision to dismiss Johnson's motion to suppress pursuant to Crim.R. 47.

**{¶ 16}** Johnson also argues that it was error for the trial court to not, at the very least, hold a hearing to address the concerns he raised about Officer Eversole's driving within his motion. The purpose of a motion to suppress, however, "is to permit the court to deal as a matter of law with asserted constitutional deficiencies in searches and seizures, or in

---

2. This is not to say the police have free reign to act in any manner that they please. But those claims, if they exist, can be brought pursuant 42 U.S.C. 1983 and not as part of a motion to suppress. *See Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010 and CA2009-08-012, 2010-Ohio-3368, ¶ 79 ("Section 1983, Title 42, U.S.Code, provides a remedy to persons whose federal rights have been violated by government officials"); *see also Arsan v. Keller*, 784 Fed.Appx. 900, 916 (6th Cir.2019) ("Section 1983 creates a federal cause of action against 'any person' who deprives someone of a federal constitutional right while acting under color of state law"). This includes claims for both physical and emotional injuries. *Black v. Hicks*, 8th Dist. Cuyahoga No. 108958, 2020-Ohio-3976, ¶ 75 ("[b]oth physical and emotional injuries caused by the constitutional deprivation are compensable under 42 U.S.C. 1983").

3. Such an interpretation would also severally limit, and in some instances outright eliminate, a police officer's ability to enforce the rule of law anytime a criminal was traveling above the posted speed limit. Such holding would be, without question, an absurdity and make virtually all laws optional and without consequence so long as the criminal offender was able to escape apprehension by traveling above the speed limit.

securing statements from those in custody." *State v. Stubbers*, 1st Dist. Hamilton No. C-830043, 1983 Ohio App. LEXIS 11893, *7 (Nov. 30, 1983). To that end, "[i]n order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *Shindler*, 70 Ohio St.3d at syllabus. Johnson failed to do so in this case. Therefore, because Johnson was required provide the legal and factual bases with sufficient particularity before he was entitled to a hearing on his motion, something which Johnson did not do, it was not error for the trial court to dismiss Johnson's motion to suppress without first holding a hearing on the matter. Johnson's claim otherwise lacks merit.

## Conclusion

{¶ 17} For the reasons outlined above, we find no error in the trial court's decision to dismiss Johnson's motion to suppress for failing to state with particularity the grounds upon which the motion was based as required by Crim.R. 47. We also find the trial court did not err by dismissing Johnson's suppression motion without first holding a hearing on the matter. Therefore, finding no merit to either of the two arguments raised by Johnson herein, Johnson's single assignment of error lacks merit and is overruled.

{¶ 18} Judgment affirmed.

PIPER, J., concurs.

BYRNE, J., dissents.

**BYRNE, J., dissenting.**

{¶ 19} Crim.R. 47 states that a motion filed in a criminal case "shall state with particularity the grounds upon which it is made * * *." The Ohio Supreme Court has interpreted this language as requiring the defendant to "state the motion's legal and factual

bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Shindler*, 70 Ohio St.3d 54, at syllabus (1994). "After the defendant meets this burden by effectively placing the prosecutor and the court on sufficient notice of the issues to be determined, the burden then shifts to the state to show substantial compliance with the applicable standards * * *." *State v. Miller*, 12th Dist. Warren No. CA2020-01-003, 2021-Ohio-277, ¶ 24.

{¶ 20} In his motion to suppress, Johnson argued that certain evidence should be suppressed because he was subject to an "illegal pursuit and traffic stop," that "[t]he officer had no reasonable basis upon which to pursue and ultimately stop" him, and that "[t]his illegal pursuit and stop led directly to the seizure of the drug from which forms the basis of the charge" against him. Elaborating further, Johnson argued that Officer Eversole drove in excess of the speed limit, moved his vehicle left of center several times, weaved around other motorists, and engaged in other alleged unlawful or dangerous driving behavior, and as a result the motion to suppress should be granted.

{¶ 21} In my view, Johnson's motion to suppress met the Crim.R. 47 standard of placing "the prosecutor and the court on notice of the issues to be decided." *Shindler* at syllabus. This is evident from the text of the state's motion to dismiss Johnson's motion to suppress, in that the state acknowledged that Johnson argued that he was subject to an "illegal pursuit and traffic stop." The state went on to specifically address the merits of Johnson's argument, explaining why, in the state's view, Johnson was wrong in arguing that Officer Eversole's alleged traffic violations required suppression of evidence. In other words, while the prosecution stated that it was "not put on notice as to what right is alleged to have been violated[,]" the prosecution was in fact put on notice because it specifically addressed Johnson's argument. The fact that Johnson's argument had no legal merit does not mean that the prosecutor was not put on notice, or that Johnson failed to meet the

standard established by Crim.R. 47.

{¶ 22} I disagree with the majority opinion because it effectively treats Crim.R. 47 like a criminal procedure version of Civ.R. 12(B)(6). Civ.R. 12(B)(6) provides that a court may dismiss a claim based on a plaintiff's "failure to state a claim upon which relief can be granted * * *." In the Civ.R. 12(B)(6) context a court may dismiss a claim before trial when that claim is meritless as a matter of law. But the text of Crim.R. 47 is different; it merely requires a motion in a criminal case to "state with particularity the grounds upon which it is made[,]" and it contains no language authorizing courts to *dismiss* a motion merely because that motion makes an argument that is legally meritless.

{¶ 23} I agree with the majority's analysis regarding the merits of Johnson's motion to suppress. As the majority correctly explains, "a traffic stop that otherwise satisfies the reasonable requirements set forth under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution does not become unreasonable simply because the stop was initiated by a police officer who did not adhere to all traffic laws prior to effectuating the stop." *Majority Opinion* at ¶ 15. But even though I agree with the majority that Johnson's motion to suppress did not, on its face, make any meritorious argument in favor of suppression, I conclude that the trial court should have denied the state's motion to dismiss because Johnson's argument nevertheless met the minimum particularity standard established by Crim.R. 47. The trial court instead should have denied the state's motion to dismiss and then proceeded to conduct a suppression hearing. Merely because Johnson presented a weak suppression argument and was very unlikely to have been meritorious at a suppression hearing does not mean he did not meet the Crim.R. 47 particularity standard in his motion to suppress.

{¶ 24} For these reasons, and with respect for my colleagues in the majority, I dissent.